IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBORAH C. PITTMAN,

                    Plaintiff,                              CV-06-147-ST

        v.                                       OPINION AND ORDER

THE TRAVELERS INDEMNITY COMPANY, a
Connecticut corporation, and CONSTITUTION
STATE SERVICES LLC,

                    Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Deborah C. Pittman ("Pittman"), filed this action on February 2, 2006, seeking

to recover damages for emotional distress caused by defendants, The Travelers Indemnity

Company ("Travelers") and Constitution State Services, LLC ("Constitution"), who allegedly

administered Pittman's workers' compensation claim on behalf of her employer.  Pittman alleges

that during the course of processing her workers' compensation claim filed on September 25,

2003, defendants' agents lied to defendants' attorney, asserting that a videotape and recorded

statement supporting her claim did not exist.  Defendants' attorney then sought and was granted

an indefinite postponement of the hearing which caused Pittman – who was operating under

severe financial strains – undue emotional distress.  Pittman alleges one claim for relief in two

alternative counts:  Count One alleges a "deliberate intention to injure" under ORS 656.156 and

Count Two alleges a claim for intentional infliction of emotional distress ("IIED").

     Pittman alleges that she is a citizen of Oregon, that Travelers is a Connecticut

corporation, that Constitution is a wholly-owned subsidiary of Travelers Property Casualty, a

Minnesota corporation, and that she has suffered emotional distress damages in the sum of $10

million.  As a result, jurisdiction is based upon diversity of citizenship under 28 USC § 1332.

     All parties have consented to allow a Magistrate Judge to enter final orders and judgment

in this case in accordance with FRCP 73 and 28 USC § 636(c).

     Defendants have filed a Motion to Dismiss (docket #9).  For the reasons that follow, the

motion is granted.

## STANDARDS

     In evaluating a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6),

the court must accept the allegations of material fact as true and construe those allegations in the

light most favorable to the non-moving party.  *Parks Sch. of Bus. v. Symington*, 51 F3d 1480,

1484 (9th Cir 1995).  A claim should be dismissed only if it appears beyond doubt that the

plaintiff can establish no set of facts under which relief could be granted.  *Livid Holdings Ltd. v.

Salomon Smith Barney, Inc.*, 416 F3d 940, 946 (9th Cir 2005).

     In its response to defendants' Motion to Dismiss, plaintiff submitted extrinsic evidence

which defendants moved to strike pursuant to FRCP 12(f).  Although this court granted that

motion, it nevertheless may "consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F3d 699, 706 (9th Cir), *cert denied*, 525 US 1001 (1998), quoting *Branch v. Tunnell*, 14 F3d 449, 454 (9th Cir), *cert denied*, 512 US 1219 (1994). The Ninth Circuit expanded this rule to documents crucial to a plaintiff's claims, but not explicitly incorporated in the complaint, based on the policy concern underlying the rule, namely "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Id*, citing *Pension Benefit Guaranty Corp. v. White Consol. Indus.*, 998 F2d 1192, 1196-97 (3rd Cir 1993), *cert denied,* 510 US 1042 (1994) (in such a situation, the plaintiff "obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished"). Accordingly, this court will consider the documents on which Pittman's claims are based and whose authenticity is not questioned by defendants.

## FACTUAL ALLEGATIONS

Pittman alleges that she suffered a left shoulder rotator cuff tear on September 24, 2003, caused by repeatedly having to push and pull a heavy cart during her work day. Complaint, ¶¶ 4-5. She filed a workers' compensation claim the following day. On October 6, 2003, Pittman gave a telephone interview to defendants, and on October 29, 2003, underwent an independent medical examination ("IME") by defendants' doctor. *Id*, ¶ 5. Despite a letter from defendants requesting that he do so, the doctor performing the IME did not explore the details of Pittman's repetitive overuse of her left shoulder in pushing and pulling her cart, and simply opined that the last pull of the cart by Pittman did not cause her September 24, 2003 injury. *Id*.

On October 30, 2003, defendants videotaped a co-worker seated at Pittman's chair pushing and pulling the cart. *Id*, ¶ 6. Later that same day, defendants' field investigator took a recorded statement from Pittman. *Id*. A week later on November 6, 2003, defendants denied Pittman's claim as not work-related. *Id*, ¶ 7; Plaintiff's Exhibit 9. Pittman then retained an attorney and on November 12, 2003, filed a request for a hearing before an administrative law judge ("ALJ") and served a discovery demand on defendants. Complaint, ¶¶ 7-9.

At that time, Oregon law provided that a hearing date had to be scheduled within 90 days of the filing of the request for a hearing, but placed no limitation on the time within which a hearing would be rescheduled in the event of a request for a postponement. *Id*, ¶ 8. Pittman's initial hearing was set for February 9, 2004. *Id*; Plaintiff's Exhibit 15. Pittman was anxious for this hearing to take place since her inability to work had placed her under serious financial strain. Complaint, ¶¶ 8-9.

On November 25, 2003, defendants took a second recorded statement from Pittman. *Id*, ¶ 7. On December 5, 2003, Pittman underwent surgery to repair her left shoulder rotator cuff tear and was unable to work for several weeks thereafter. *Id*, ¶ 9. On January 16, 2004, Pittman's attorney faxed a letter to defendants' attorney advising that the discovery he had been provided did not include a copy of the videotape or recorded statement obtained by defendants on October 30, 2003. *Id*, ¶ 10; Plaintiff's Exhibit 17. Pittman's attorney also wrote a letter dated January 26, 2004, to the ALJ, with a copy to defendants' attorney, complaining that defendants were withholding the videotape and recorded statement and also outlining Pittman's theory of her case as to repetitive overuse causation of her shoulder condition which soon would be supported by an opinion letter from Pittman's surgeon. Complaint, ¶ 11.

4 - OPINION AND ORDER

Defendants' attorneys responded with a letter dated January 28, 2004, to the ALJ stating that defendants had no videotape or recorded statement from October 30, 2003, and requesting a postponement of the February 9, 2004 hearing date because they were surprised that a separate theory of repetitive overuse ("occupational disease, rather than an industrial injury") was involved in the case. *Id*; Plaintiff's Exhibit 18. Defendants' agents lied to defendants' attorney, telling him that no such videotape or recorded statement – other than the November 23, 2003 statement – existed. *Id*, ¶ 14. By letter dated January 30, 2004, to the ALJ, with a copy to defendants' attorney, Pittman's attorney strenuously objected to a postponement of the hearing, pointing out that an October 6, 2003 note in defendants' file referred to obtaining a recorded statement from Pittman and that Pittman specifically remembered giving a recorded statement. *Id*, ¶ 11.

Nevertheless, after conducting a telephone conference with the attorneys, the ALJ granted defendants' request, indefinitely postponing the hearing and explaining in part:

> I found extraordinary circumstances beyond the control of the employer based on the timing of claimant's request, made by letter of January 16, 2004 . . .
> The postponement was granted to the employer for the reasons that this particular issue was raised repeatedly during the 1990s and my understanding of the vast majority of the cases, if not all of the cases, was that the postponement was always granted in order to allow the parties to present all theories at the same proceedings if they had in fact met the requirements of the Oregon Workers' Compensation Law to allow consideration of the issues at one consolidated hearing. It remains a contested issue whether the January 16, 2004, letter is and should be considered as the first notice of claim for claimant's condition as an occupational disease.

*Id*, ¶ 12; Plaintiff's Exhibit 19.

5 - OPINION AND ORDER

Pittman, who was under severe financial pressures due to being off work, was emotionally devastated and upset at the prospect of having to wait approximately another year for a hearing.  Complaint, ¶ 13.

Two weeks later, defendants made a very low settlement offer to Pittman.  *Id*, ¶ 14; Plaintiff's Exhibit 22.  After Pittman rejected that offer, her attorney took the deposition of the doctor who had performed the IME on Pittman on October 29, 2003.  Complaint, ¶ 14.  That testimony supported Pittman's assertion of a repetitive overuse injury which was work related. *Id*, ¶ 15.

Within a week, defendants' agents produced the videotape and recorded statement which they had been concealing and provided it to defendants' attorney, who in turn immediately provided it to Pittman's attorney.  *Id*, ¶ 16.  Following a second IME, which revealed that Pittman's workplace activities were the major contributing cause of her rotator cuff tear, defendants rescinded their denial of Pittman's workers' compensation claim on May 18, 2004. *Id*, ¶ 17; Plaintiff's Exhibit 24.

## DISCUSSION

Defendants seek dismissal of both Counts One and Two because they fail to state a claim, are barred by the exclusive remedies of Oregon's Workers' Compensation Law, and are premised upon privileged communications.  This court agrees that these allegations fail to state a claim and, therefore, need not address defendants' alternative arguments.

///

///

## I.    Count One

Oregon's Workers Compensation Law imposes liability, without fault, on employers for "compensable injuries" to its workers.  ORS 656.017.  This law is the exclusive remedy for injuries "arising out of and in the course of employment that are sustained by subject workers." ORS 656.018(1)(a).  In exchange for this no-fault liability, employers are granted immunity from all other remedies the workers may have for such injuries.  ORS 656.018(2).  This exemption from liability extends also to the employer's workers' compensation insurer and claims administrator.  ORS 656.018(3).  However, an exception to the immunity granted by ORS 656.018(1)(a) arises when the injury "results to a worker from the deliberate intention of the employer of the worker to produce such injury."  ORS 656.156(2).

Pittman assumes that any claim against her employer's workers' compensation insurer (Travelers) or claims adjuster (Constitution) arising out of the handling of her workers' compensation claim falls under the statutory immunity provision of ORS 656.018.  In order to bypass this immunity, Pittman attempts to impose liability on defendants under the exception for deliberate injuries set forth in ORS 656.156(2).  Accordingly, Count One alleges a claim for damages caused by defendants' "deliberate intention to cause severe emotional injury to [her] by effectuating a lengthy postponement which would keep [her] in a desperate financial circumstance and soften her up for an effort by defendants at a low ball settlement attempt." Complaint, ¶ 19.

For this exception to apply, "'the employer must have determined to injure an employee and used some means appropriate to that end; . . . there must be a specific intent, and not merely carelessness or negligence, however gross." *Bakker v. Baza'r, Inc.,* 275 Or 245, 253, 551 P2d 1269, 1274 (1976), quoting *Jenkins v. Carman Mfg. Co.,* 79 Or 448, 453-54, 155 P 703, 705

(1916).  In other words, the employer "has had an opportunity to weigh the consequences and to

make a conscious choice among possible courses of action, and also that the employer

specifically intend 'to produce . . . injury'"  *Lusk v. Monaco Motor Homes, Inc.,* 97 Or App 182,

188, 775 P2d 891, 894 (1989).

An argument can be made that Pittman's alleged injury is not one "arising out of and in

the course of employment," ORS 656.018(1)(a), because it occurred in the handling of her

workers' compensation claim after she suffered her on-the-job injury.  In that event, Oregon's

Workers' Compensation Law does not apply to Pittman's claim and defendants have no statutory

immunity under ORS 656.018(3).  Because this court concludes that the deliberate injury

exception in ORS 656.156(2) does not apply here, it need not decide, and therefore assumes, that

defendants are immune from Pittman's claim under ORS 656.018(3).

Seeking to fall within the scope of the deliberate injury exception, Pittman alleges that

defendants acted with the deliberate intent to injure her during the claims handling process.  The

problem with this allegation is that ORS 656.156(2) only grants an exemption to injuries caused

by "the deliberate intention of the *employer*."  Pittman is not suing her employer.  Oregon's

Workers' Compensation Law defines "employer" as "any person . . . who contracts to pay a

remuneration for and secures the right to direct and control the services of any person."  ORS

656.005(13)(a).  Even assuming that Travelers or Constitution are administrators of workers'

compensation claims for Pittman's employer, which they deny, Pittman fails to allege that those

entities "contract[ed] to pay a remuneration for and secure[d] the right to direct and control"

Pittman's services.  In other words, neither Travelers not Constitution are employers who may be

held liable for damages under ORS 656.156(2) outside the workers' compensation system for deliberately injuring an employee.

In response, Pittman urges the court to look not only to the text of ORS 656.156(2), which refers only to the "employer," but also to the context of the statute. "In interpreting a statute, the court's task is to discern the intent of the legislature. To do that, the court examines both the text and context of the statute." *PGE v. Bureau of Labor & Indus.,* 317 Or 606, 610, 859 P2d 1143, 1145-46 (1993) (citations omitted). She points out that when the Oregon Legislature amended the Workers' Compensation Law in 1965 by replacing ORS 656.152 with ORS 656.016 and ORS 656.018, it made no change in the wording of the deliberate injury exception in ORS 656.156(2). Similarly it made no change to ORS 656.156(2) in 1989 when it added "the self-insured employer's claims administrator" to the list of persons immune under ORS 656.018(3). To avoid an absurd construction of the two statutes, Pittman contends that the amendments to ORS 656.018(3), which granted immunity to persons acting for the employer, must be interpreted as subject to a corresponding exception to immunity under ORS 656.156(2). Otherwise she argues, for example, that neither a corporate employer nor its employee could be held liable for deliberate injuries caused to a subject worker by the employee. A corporate employee has immunity under ORS 656.018(3), but is not made subject to liability under ORS 656.156(2) for acting on behalf of the employer when causing a deliberate injury to the subject worker.

This court rejects Pittman's argument. Both the text and context of ORS 656.156(2) are quite clear that it applies only to an employer and does not produce an absurd result when considered together with the immunity provision of ORS 656.018(3). Contrary to Pittman's

9 - OPINION AND ORDER

example, if a corporate employee deliberately causes injury to a subject worker, then the corporate employer may be held liable under ORS 656.156(2) on the basis that it is liable for the acts of its agents. Furthermore, Pittman has identified, and this court has found, no case that applies the deliberate injury exemption of ORS 656.156(2) to any person other than an employer. In both cases cited by Pittman, the employer, and not some other person or entity, was held potentially liable under ORS 656.156(2) for intentionally injuring an employee. *Gulden v. Crown Zeller-Bach Corp.*, 890 F2d 195 (1988) (employer ordered employees to clean up toxic spill without protective clothing); *Kilminister v. Day Mgmt. Corp.*, 323 Or 618, 919 P2d 474 (1996) (employer ordered employees to climb a tower when it was substantially certain to cause injury).

The statutory provision on which Count One relies is not applicable and provides Pittman with no remedy for the conduct which forms the basis of her claim. Accordingly, Count One is dismissed.

## II. <u>Count Two</u>

Pittman pleads Count Two as an alternative claim to avoid the statutory immunity provision of ORS 656.018. Captioned "A *Smother's* Theory," Count Two alleges that at the time of the adoption of the Oregon Constitution in 1857, "the common law recognized a cause of action for the intentional injury of one person by another person." Complaint, ¶ 21. Oregon's Workers' Compensation Law was enacted in 1913 after adoption of the Oregon Constitution. Citing *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), Count Two alleges that "[t]o the extent that the statutory immunity provision of ORS 656.018 of the worker's compensation laws . . . purport[s] to abrogate that common law cause of action protected by the

remedy clause of [Article I, Section 10 of] the Oregon Constitution, it is unconstitutional" and does not bar an intentional tort claim. Complaint, ¶ 21. In other words, Pittman claims that she may bring a tort action because a psychological injury caused by the tortious handling of her workers' compensation claim falls outside the immunity granted to defendants by Oregon's Workers' Compensation Law.

Pittman concurs with defendants that Count Two seeks to state an IIED claim. Thus, this court will first address whether the facts alleged in the Complaint state an IIED claim.

To state a claim for IIED, the plaintiff must show: (1) defendant intended to inflict severe emotional distress on plaintiff; (2) defendant's acts were the cause of plaintiff's severe emotional distress; and (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841, 849 (1995); *Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000, 1010 (1989). Conduct that is merely "rude, boorish, tyrannical, churlish and mean" does not satisfy the high standard that the defendant's acts must constitute an extraordinary transgression of the bounds of socially tolerable conduct. *Patton v. J.C. Penney Co.*, 301 Or 117, 124, 719 P2d 854, 858 (1986), *abrogated on other grounds by McGanty*, 321 Or at 544-45, 901 P2d at 849-50. It is a question of law for the court to determine whether a complaint sufficiently alleges conduct that constituted an extraordinary transgression of the bounds of socially tolerable conduct. *Delaney v. Clifton*, 180 Or App 119, 129, 41 P3d 1099, 1106, *review denied*, 334 Or 631, 54 P3d 1041 (2002).

Oregon has permitted an employee to sue his employer's workers' compensation insurer for IIED. In *Crosby v. SAIF*, 73 Or App 372, 699 P2d 198 (1985), a former employee alleged that the employer and its workers' compensation insurer had conspired to divest him unlawfully

of his rights to workers' compensation benefits and to terminate him, that the insurer had

interfered with his contractual relationship with his employer, and that the conduct of both

defendants was outrageous.  The gravaman of the complaint was that the employee was

discharged for filing a workers' compensation claim.  The court rejected the insurer's arguments

that the complaint failed to state an IIED claim and that it had no special relationship with the

employee sufficient to support such a claim.  However, the court did not state why the facts were

sufficient to state an IIED claim and provides little guidance here.  In any event, the allegations

in *Crosby* involving a wrongful termination are clearly distinguishable from Pittman's

allegations of a delay in handling a claim.

Although *Crosby* did not address whether an IIED claim would be barred by the

exclusive remedy of Oregon's Workers' Compensation Law, a later case does touch on that

issue.  In *Gordineer v. Bellotti*, 100 Or App 102, 785 P2d 362, *review denied*, 310 Or 121, 794

P2d 793 (1990), the plaintiff sought a declaratory judgment that his claim against his former

employer and its insurer was not subject to the exclusive workers' compensation remedy.  He

alleged that his former employer gave false and perjured testimony and evidence at his

compensation hearing which resulted in the erroneous determination and that, as a result, he

suffered emotional distress and a loss of benefits to which he was entitled.  The court noted that

the issue was "not whether the wrongs arose out of his compensable injury or were post-injury,

but whether they were matters 'concerning a claim,' for which the decision and review

provisions of workers' compensation law are exclusive."  *Id*, 100 Or App at 105-06, 785 P2d at

363-64 (citations omitted).  It distinguished *Crosby* because it involved "no issue . . . about the

exclusivity of the workers' compensation procedures" and "had nothing to do with the

disposition of the plaintiff's compensation claim." *Id*, 100 Or App at 106, 785 P2d at 364.

"Here, in contrast, plaintiff alleges damages that arose directly out of a workers' compensation

proceeding in which the amount of compensation was in issue." *Id*. That the plaintiff sought

general and punitive damages in addition to a loss of benefits "does not alter the nature of his

cause of action" because he sought "to overturn a workers' compensation decision." *Id*. As a

result, the court held that his claim was barred by the exclusive remedies of the workers'

compensation law.

Pittman's IIED claim is similar to *Gordineer* in that it involves alleged perjury in a

workers' compensation hearing, but is dissimilar in that it does not involve the amount of

compensation awarded. Pittman is not attempting to overturn a workers' compensation benefits

determination, but instead seeks damages for an allegedly intentional delay in processing her

claim. Oregon has not yet decided whether such a claim is barred by the exclusive remedies of

the Workers' Compensation Law. However, this court need not be the first to decide that issue

because Pittman fails to state an IIED claim.

Again, the basis of Pittman's claim is that defendants' agents intentionally concealed

(both from Pittman's attorney and defendants' own attorney) the videotape and recorded

statement taken on October 30, 2003. Pittman, who observed the taking of the videotape and

participated in the recorded interview, knew that both items existed and contends that

defendants' agents lied to defendants' attorney that the videotape and recorded statement did not

exist. As a result, the ALJ granted a continuance of the hearing date on Pittman's workers'

compensation claim appeal. After the postponement, which lasted about three months, the

parties conducted further discovery and defendants accepted Pittman's claim.

13 - OPINION AND ORDER

At worst, these factual allegations assert that defendants succeeded in obtaining a continuance of the hearing because their agents lied about the existence of a videotape and recorded statement, all with the nefarious purpose of putting financial pressure on Pittman to accept a lowball settlement offer. The only alleged false communications were made by defendants' agents to defendants' attorney, who then conveyed them in the normal course of litigation to Pittman's attorney, who – also during the normal course of litigation – communicated them to the ALJ presiding over that litigation.

Simply seeking a postponement of a workers' compensation hearing from a neutral decision-maker is neither outrageous nor extreme conduct. Here, however, Pittman contends that it was an extraordinary transgression of the bounds of socially tolerable conduct by defendants to maliciously conceal evidence for the purpose of engineering an indefinite set-over of the hearing date to soften Pittman up for an unreasonably low settlement offer. Pittman points out that intentional concealment of evidence constitutes the commission of a crime under Oregon law. ORS 162.295.[1]

The facts in this case are not nearly as egregious as in the two cases relied upon by Pittman. In the first case, *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal App 3d 376, 89 Cal Rptr 78 (1970), the insurer stopped making disability payments to the insured after lying that it had made an intensive investigation and discovered a failure by the insured to disclose a

---

[1] ORS 162.295 provides in relevant part as follows:
"(1) A person commits the crime of tampering with physical evidence if, with intent that it be . . unavailable in an official proceeding which is then pending . . . the person:
      (a) . . . conceals . . . physical evidence impairing its availability; or . . .
      (c) Prevents the production of physical evidence by . . . deception against any person.
(2) Tampering with physical evidence is a Class A misdemeanor."

congenital back condition on his application.  The insurer offered to settle by not demanding a

return of past payments in exchange for cancellation of the policy and a full release.  Discussing

*Fletcher* in another case, the Oregon Supreme Court characterized this "intentional program of

harassment for the purpose of getting its insured in such an upset and emotional state of mind

that he would readily settle the company's remaining liability" as "a typical case of outrageous

conduct."  *Farris v. United States Fidelity & Guaranty Co.*, 284 Or 453, 463, 587 P2d 1015,

1020 (1978).  In contrast, defendants did not lie directly to Pittman, but allegedly lied only to

their own attorneys.  Pittman's attorney knew that defendants were not being truthful and

unsuccessfully tried to convince the ALJ of that fact.  Nothing was concealed from Pittman.

Also in contrast to *Fletcher,* defendants did not attempt to stop making payments to an insured,

but instead denied coverage and, after resolving the contested legal proceedings, accepted

coverage.

The second case cited by Pittman, *Green v. State Farm Fire & Cas. Co.*, 667 F2d 22 (9th

Cir 1982) (applying Oregon law), also involved lies told directly by the insurer to the insured.

The insurer took the insured's statement after assuring him that the information gathered would

be used in confidence to determine coverage.  However, the insurer knew that the statement

would aid the state police in obtaining an indictment against the insured for arson and its

attorney delivered a copy of the statement to the police.  After the state police found insufficient

evidence to charge the insured with arson, the insurer's adjuster identified himself as a state

policeman and questioned the insured's neighbors about the fire, implying that the insured has

set it.  The adjuster also told the insured that if he pressed his claim, the insurer would charge

him with arson.  After filing his claim, the insured was summoned to testify before the grand

jury, but was not indicted.  While the insurer characterized "its conduct as reasonable behavior

for an insurer investigating a claim[,]" the Ninth Circuit held that such a claim can stand when

"[a] carefully instructed jury decided otherwise, and the evidence fully supports that conclusion."

*Id* at 24.  In contrast, Pittman was not summoned before a grand jury or threatened with criminal

charges if she pursued her claim.

        A review of other cases indicates substantial disagreement as to when an insurer's

handling of an insurance claim becomes tortious.  The leading case of  *Stafford v. Westchester*

*Fire Ins. Co.*, 526 P2d 37 (Alaska 1974), allowed an IIED claim against an insurer for

deliberately delaying payments, misleading the plaintiff as to his or her rights, and discouraging

the plaintiff from exercising those rights.  The court concluded that when committing an

intentional tort, the insurer was not acting as the employer and lost immunity from suit.  "The

*Stafford* case set off a wave of attempted tort actions based on intentional delay in or termination

of payments or of medical treatments. In the great majority of these cases, for one reason or

another, a cause of action was held not to lie.  But in a substantial minority the cause of action

survived, as against the exclusiveness defense."  Larson's Workers' Compensation Law,

§ 104.05[3], p. 104-30 ("Larson's").  In the minority of cases which allow a tort claim outside

the exclusiveness defense, some jurisdictions allow a bad faith claim, while others require

outrageous conduct.  *Id* at 104-31-33 (citing cases).  "There is no consistent rationale, but among

the reasons cited in these cases are that: (1) the injury does not arise out of, or in the course of,

employment; (2) the remedy provided under the act is inadequate to compensate for the harm;

and (3) the act does not apply to intentional torts or to particularly egregious or outrageous

conduct." *DeOliveira v. Liberty Mut. Ins. Co.,* 273 Conn 487, 504-505, 870 A2d 1066, 1076 (Conn 2005) (citations omitted).

"[I]n almost all of the cases in which a claim of 'outrage' has been resorted to have rejected it on the ground that the alleged conduct was not outrageous enough." LARSON'S, § 104.05[3], p. 104-33 (citing cases). A rare example of sufficiently outrageous conduct is *Young v. Hartford Acc. & Indem. Co*, 303 Md 182, 492 A2d 1270 (1985), involving a claim by a plaintiff who suffered emotional trauma after being assaulted at work who alleged that the insurer, in attempt to reduce its monetary exposure, insisted on psychiatric examination with deliberate intent that the plaintiff either commit suicide or drop her claim, and the plaintiff thereafter attempted suicide. Another rare example is *Unruh v. Truck Ins. Exchange*, 7 Cal3d 616, 620-21, 498 P2d 1063, 102 Cal Rptr 815 (1972), in which the insurer's agent misrepresented his identity to the claimant, causing her to become emotionally involved with him and inducing her to engage in unusual activities beyond her normal physical capabilities while another person filmed her. When the claimant discovered the deceit, she suffered an aggravation of her physical injury and a physical and mental breakdown requiring hospitalization. In contrast, a mere delay in processing a claim, even if caused in bad faith, is insufficient. *DeOliveira*, *supra.*

> It seems clear that a compensation claimant cannot transform a simple delay in payments into an actionable tort by merely invoking the magic words "fraudulent, deceitful and intentional" or "intentional infliction of emotional distress" or "outrageous" conduct in his complaint. The temptation to shatter the exclusive principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reasons for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality.

LARSON'S, § 104.05[3], pp. 104-33-35.

Although no reason can justify the intentional concealment of evidence, the alleged misconduct by defendants simply does not fall sufficiently outside the bounds of socially tolerable conduct to state an IIED claim. This case involves no allegations similar to *Crosby*, *Fletcher*, *Green, Stafford*, *Young*, or *Unruh*. Instead, Pittman's claim is premised solely on defendants' communications with the ALJ in the course of contested legal proceedings. Pittman was represented by counsel who strenuously opposed a set-over of the hearing date by pointing out to the ALJ that, contrary to the representation by defendants' attorneys, the videotape and recorded interview existed. Defendants may have requested the postponement of the hearing date, but only the ALJ, a neutral third-party, had the power to postpone the hearing. He did so in full recognition of a contested issue as to when defendants first knew that Pittman claimed an occupational disease.

At most, this case involves a single postponement of a hearing date based on a discovery dispute in a case which was ultimately resolved in Pittman's favor in less than seven months. Pittman may have had a remedy under ORS 656.262(11)(a)[2] in the course of her workers' compensation appeal for these alleged misdeeds and abuses of the discovery process and may or may not be able to persuade a district attorney to prosecute what she alleges to be criminal

---

[2]  ORS 656.262(11)(a) provides:
"If the insurer or self insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due. Notwithstanding any other provision of this chapter, the director shall have exclusive jurisdiction over proceedings regarding solely the assessment and payment of the additional amount described in this subsection…."

conduct.  However, a searching review of Pittman's allegations reveals no basis for an IIED claim as alleged in Count Two.

## **ORDER**

For the reasons stated above, defendants' Motion to Dismiss (docket #9) is GRANTED and this action is DISMISSED with prejudice.

DATED this 7th day of June, 2006.


/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

19 - OPINION AND ORDER